(Not for Publication)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                :
KERMIT GARCIA,                  :
                                :
         Plaintiff,             :     Civil No. 06-435 (RBK)
                                :
    v.                          :     **OPINION**
                                :
STATE OF NEW JERSEY, et al.,    :
                                :
         Defendants.            :
_____ :

**KUGLER**, United States District Judge:

Presently before the Court are motions by defendants State of New Jersey, New Jersey Division of State Police, incorrectly identified by Plaintiff as New Jersey State Police, and New Jersey Department of Corrections (collectively "State Defendants"), Gloucester County Sheriff Department ("GCSD"), Gloucester Township ("Gloucester"), Lieutenant Joseph Doman ("Doman"), incorrectly identified by Plaintiff as Detective Sergeant Dollman, and the Honorable Nicholas Trabosh ("Judge Trabosh"), to dismiss the Complaint filed by plaintiff Kermit Garcia ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, this Court will grant in part and deny in part these motions.

**I. BACKGROUND**

1

Plaintiff filed his Complaint on January 27, 2006, naming numerous parties as defendants. Plaintiff alleges that on or about January 24, 2004, these defendants, "through their agents[,] servants and/or employees wrongfully arrested, incarcerated, imprisoned and detained plaintiff in the Gloucester County Jail based on warrants . . . issued arising out of criminal charges related to alleged acts another individual, defendant Rajan Lavan, committed that plaintiff did not commit." (Compl. ¶ 9.) Essentially, Plaintiff's claims stem from allegations that Rajan Lavan gave Plaintiff's name to law enforcement officials when he was arrested, and that defendants have subsequently detained and prosecuted Plaintiff based on warrants wrongfully issued in his name rather than that of Rajan Lavan.

In the Complaint, Plaintiff includes seven counts: a claim for relief under 42 U.S.C. § 1983 for a violation of his rights as guaranteed under the United States Constitution, a claim for a violation of his rights as guaranteed by the New Jersey Constitution, a state-law claim for intentional infliction of emotional distress, a claim for false arrest and false imprisonment, a claim for unlawful search, a claim for malicious prosecution, and a state-law claim for negligence. This Court notes that Plaintiff's claims for intentional infliction of emotional distress, false arrest and false imprisonment, unlawful search, and malicious prosecution are all considered to be state law intentional tort claims; this Court will therefore subject these claims to an identical analysis.

## II.  STANDARD UNDER RULE 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint or portions of a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R.

Civ. P. 12(b)(6).  When reviewing a Rule 12(b)(6) motion to dismiss, the Court must accept as true all allegations in the complaint and must provide the plaintiff with the benefit of all inferences that may be fairly drawn from the contents of the complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993); Wilson v. Rackmill, 878 F.2d 772, 775 (3d Cir. 1989).  The Court may not grant a Rule 12(b)(6) motion to dismiss unless it is certain that no set of facts can be proven that would entitle the plaintiff to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).

**III.   ANALYSIS**

    A.    State Defendants

        1.    Claim under § 1983

The State Defendants seek to dismiss Plaintiff's § 1983 claim on the basis of Eleventh Amendment immunity.  The Court agrees that this claim is barred by the Eleventh Amendment.

The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the kind of relief sought.[1]  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).  Likewise, absent a waiver of immunity by the state, the Eleventh Amendment precludes federal suits for money damages against states and state officers sued in their official capacities.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Because nothing in § 1983 abrogates a state's Eleventh Amendment immunity, that immunity bars

---

[1] The Eleventh Amendment provides that: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI.

Plaintiff's claims against the State Defendants.  See Quern v. Jordan, 440 U.S. 332 (1979).

Additionally, the State Defendants do not qualify as "persons" within the meaning of §1983.  The statute provides in relevant part:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (emphasis added).  However, neither states, nor their departments and agencies, nor state officials sued in their official capacities for money damages are "persons" within the meaning of § 1983.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 70-71, n.10 (1989); Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989) (holding that the New Jersey Department of Corrections is not a person under § 1983).  Therefore, because the State Defendants are immune under the Eleventh Amendment, and thus, are not "persons" within the meaning of § 1983, the Court will dismiss Plaintiff's § 1983 claim against the State Defendants.

### 2. Claim under the New Jersey Constitution

While claims for violations of rights guaranteed under the federal Constitution are brought pursuant to a statute, namely § 1983, the New Jersey Constitution itself provides a cause of action for a violation of the rights which it guarantees.  See Scully v. Borough of Hawthorne, 58 F. Supp. 2d 435, 459 (D.N.J. 1999) ("The New Jersey Supreme Court has held that the Constitution of the State of New Jersey may provide a private cause of action premised upon alleged violations of the State constitution.") (citing Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 76-80, 389 A.2d 465 (1978)).

The State Defendants assert that Plaintiff is barred from bringing this claim for several reasons. First, the State Defendants allege that under the New Jersey Tort Claims Act ("TCA"), the State Defendants cannot be held liable "for acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J. Stat. § 59:2-10. Furthermore, the State Defendants assert that Plaintiff failed to file timely notice of a claim as required by the TCA, N.J. Stat. §59:8-3. Finally, the State Defendants claim that Plaintiff has not set forth sufficient facts to assert his claim that the State Defendants are liable on a theory of inadequate supervision, training, direction, or control.

This Court finds that the State Defendants' arguments pertaining to provisions of the TCA are without merit insofar as Plaintiff's state constitutional claim is concerned. As the State Defendants note in their brief, the TCA "defines the boundaries within which tort claims may be brought against public entities." (Defs.'s Br. at 17.) However, this District has stated that the New Jersey legislature "never intended to subject constitutionally-based torts . . . to the notice-of-claim provisions of the TCA." Garlanger v. Verbeke, 223 F. Supp. 2d 596, 604 (D.N.J. 2002). The Court in Garlanger based its holding in part on the New Jersey Supreme Court's decision in Greenway Development Co., Inc. v. Borough of Paramus, 163 N.J. 546, 750 A.2d 764 (2000), in which the Court held that an action for an unconstitutional taking of land was not subject to the TCA's notice-of-claim provision, noting that "statutes [cannot] abrogate constitutional rights." Id. at 558, 750 A.2d at 770 (quotation omitted). Insofar as Plaintiff in this case alleges violations of his state constitutional rights, this Court will likewise hold the TCA's provisions – including both its notice-of-claim requirements and its limitation regarding intentional torts by employees – to be inapplicable.

This Court similarly finds the State Defendants' argument regarding Plaintiff's failure to allege sufficient facts to constitute liability to be unpersuasive. In his Complaint, Plaintiff alleges that those defendants acting under the color of law failed to adequately supervise, train, direct, supervise, or control those responsible for violating Plaintiff's constitutional rights. (Compl. ¶ 20, 22.) Plaintiff further alleges that the defendants acted in compliance with "policy, practice and custom." (Compl. ¶ 21.) Finally, Plaintiff alleges that these actions "violated clearly established constitutional and statutory rights of plaintiff which a reasonable person would have known." (Compl. ¶ 29.) Such allegations are sufficient to set forth a cause of action that survives a motion to dismiss pursuant to Rule 12(b)(6); indeed, without the benefit of having conducted discovery, Plaintiff is unlikely to be able to articulate these allegations with a much greater degree of specificity.

Accordingly, this Court will deny the State Defendants' motion to dismiss Plaintiff's claim for a violation of his state constitutional rights.

        3.        Intentional Tort Claims

As is stated above, under the TCA, public entities cannot be held liable "for acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J. Stat. § 59:2-10. Furthermore, "[c]ourts in this District have interpreted Section 59:2-10 of the New Jersey Tort Claims Act to bar public entities from liability for claims of intentional torts, including claims for intentional infliction of emotional distress." Kee v. Camden County, No. 04-842, 2006 U.S. Dist. LEXIS 73608, at *24 (D.N.J. Sept. 28, 2006) (citing Soto v. City of Newark, 72 F. Supp. 2d 489, 497 (D.N.J. 1999)). As the State Defendants are "public entities," see N.J. Stat. § 59:1-3, they cannot be liable for intentional torts committed

by their employees, and this Court will dismiss Plaintiff's intentional tort claims against the State Defendants.

    4.  Claim for Negligence

The State Defendants claim that Plaintiff failed to comply with N.J. Stat. §59:8-3, which requires a plaintiff to give the State timely notice before filing a tort claim against a public entity or employee.[2]  Plaintiff does not contest this assertion in his opposition brief.  As the parties agree that no notice was filed, this Court will dismiss this claim against the State Defendants.

  B.  Claims against Gloucester and GCSD

    1.  Claim under § 1983

Gloucester does not seek to dismiss Plaintiff's § 1983 claim.  However, GCSD alleges that Plaintiff has not alleged its liability under § 1983, claiming that "[w]hile a local government may be held liable for its own constitutional violations, it cannot be held liable for those of its employees." (Def.'s Br. at 6.)  It bases this assertion on the United States Supreme Court's holding in Oklahoma City v. Tuttle, 471 U.S. 808 (1985), in which the Court held that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability . . . unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy . . . ."  Id. at 823-24.  GCSD's argument is without merit.  In his Complaint, Plaintiff alleges these exact circumstances.  Plaintiff alleges that the defendants, including GCSD, failed to adequately supervise, train, direct, supervise, or control those responsible for violating

---

  [2]Unless this provision is met, "[n]o action shall be brought against a public entity or public employee under [the TCA.]" N.J. Stat. § 59:8-3.

Plaintiff's constitutional rights (Compl. ¶ 20, 22), and that the defendants acted in compliance with "policy, practice and custom." (Compl. ¶ 21.)  Subsequently, this Court will deny GCSD's motion to dismiss Plaintiff's § 1983 claim.

        2.      <u>Claim under the New Jersey Constitution</u>

Gloucester has not sought dismissal of Plaintiff's claim under the state Constitution. GCSD claims that Doman was not its employee at the time in question; rather, he was employed by the Gloucester County Department of Corrections.  Therefore, GCSD asserts that Plaintiff's claims against it should be dismissed.  However, as Plaintiff asserts in his Complaint that Doman was an employee of GCSD, and that in any event, GCSD "wrongfully arrested, incarcerated, imprisoned and detained plaintiff," (Compl. ¶ 9) Plaintiff has alleged sufficient facts to survive a motion to dismiss.  Any disagreement by GCSD over these assertions by Plaintiff is inappropriate in a motion such as the one presently before this Court.  See <u>Buck v. Hampton Twp. Sch. Dist.</u>, 452 F.3d 256, 260 (3d Cir. 2006) ("In reviewing a motion to dismiss, we accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.").  As GCSD has provided no further argument pertaining to this claim, this Court will deny GCSD's motion to dismiss this claim.

        3.      <u>Intentional Tort and Negligence Claims</u>

For the reasons set forth in sections III(A)(3)-(4) above, the Court will grant the motions by Gloucester and GCSD to dismiss these claims.

    C.    <u>Claims against Doman</u>

Doman offers no argument pertaining to Plaintiff's claims under § 1983 or the New

Jersey Constitution.  Insofar as these claims are concerned, this Court will deny Doman's motion to dismiss.  Furthermore, regarding Plaintiff's claim for negligence, this Court will grant Doman's motion to dismiss, based on the reasoning set forth in section III(A)(4) above.

Regarding Plaintiff's intentional tort claims, Doman cannot rely on the arguments set forth by the State Defendants, Gloucester, and GCSD, as Plaintiff accuses him of having been an individual responsible for these intentional torts.  Furthermore, while Plaintiff's failure to file proper notice under the TCA sounds the death knell for his negligence claim, such is not the case regarding his intentional tort claims.  In Velez v. Jersey City, 180 N.J. 284, 850 A.2d 1238 (2004), the New Jersey Supreme Court held that the TCA's notice-of-claim requirements were applicable to claims for intentional torts.  However, the Court further noted that its holding "applied prospectively to all similar causes of action accruing after the date of this opinion," id. at 297, 850 A.2d at 1246, which was June 29, 2004.  As Doman acknowledges that "Plaintiff's claims are based upon events that allegedly took place on January 29, 2004," (Def.'s Br. at 1), the Court's holding in Velez is inapplicable to the case presently before this Court.  Accordingly, this Court will deny Doman's motion to dismiss Plaintiff's intentional tort claims.

### D.     Claims against Judge Trabosh

Somewhat incredibly, Plaintiff includes Judge Trabosh, a Municipal Court judge, as a defendant.  Judges enjoy absolute immunity for acts taken in their judicial capacity.  See Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 351 (1872) ("[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts . . . .").  The Supreme Court has further stated that "[t]he immunity of a judge for acts within his jurisdiction has roots extending

to the earliest days of the common law." Imbler v. Pachtman, 424 U.S. 409, 423 n.20 (1976). The Third Circuit has held that municipal court judges enjoy this immunity. Figueroa v. Blackburn, 208 F.3d 435, 440-43 (3d Cir. 2000).

Plaintiff does not assert, nor does this Court conclude, that an exception to this immunity applies.[3] Therefore, this Court will grant Judge Trabosh's motion to dismiss as to all of Plaintiff's claims. This Court further notes that, given what appears to be Plaintiff's inexcusable failure to account for this doctrine, and instead include in his Complaint what appear to be frivolous claims against judicial officers, this Court would be within its discretion to impose sanctions pursuant to Fed. R. Civ. P. 11. See, e.g., Bullard v. Downs, No. 05-14181, 161 Fed. Appx. 886 (11th Cir. Jan. 6, 2006); Andrisani v. Vogel, No. 91-55477, 1991 U.S. App. LEXIS 31325 (9th Cir. Dec. 26, 1991); Crabtree v. Muchmore, 904 F.2d 1475 (10th Cir. 1990).

**IV. CONCLUSION**

Based on the foregoing reasoning, this Court will grant in part and deny in part the defendants' motions to dismiss. Specifically, this Court will dismiss all claims against Judge Trabosh. This Court will further dismiss the § 1983 claim against the State Defendants, the claims for intentional infliction of emotional distress, false arrest and false imprisonment, unlawful search, and malicious prosecution against the State Defendants, GCSD, and Gloucester, and the negligence claim against the State Defendants, GCSD, Gloucester, and Doman. The

---

[3] The Supreme Court has held that judicial "immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Mireles v. Waco, 502 U.S. 9, 11-12 (1991) (citations omitted).

accompanying Order shall issue today.


Dated: December 1, 2006                                         s/ Robert B. Kugler
                                                                ROBERT B. KUGLER
                                                                United States District Judge